FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 JAN 29 AM 10:35
CLERK'S OFFICE
AT BALTIMORE
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTONIO WATSON, #336897
        Plaintiff,

v.                                 CIVIL ACTION NO. JKB-13-3605

MICHAEL STOUFFER
BOBBY SHEARIN
DALE SMITH
WALTER ISER
ROBERT M. GOEBEL[1]
RONALD L. SAVILLE, JR.
        Defendants.

*****

## MEMORANDUM

Antonio Watson ("Watson") filed this 42 U.S.C. § 1983 complaint for declaratory relief and damages. He alleges that while housed at the North Branch Correctional Institution ("NBCI") in May of 2013, his mattress was removed pursuant to a cell search and not replaced for forty days. Now pending before the court is a motion to dismiss or, in the alternative, motion for summary judgment filed on behalf of defendants. ECF No. 15. An opposition, reply, and surreply followed. ECF Nos. 20, 26 & 31. Also pending is Watson's motion for appointment of counsel. ECF No. 23. For reasons to follow, defendants' motion, treated as a motion for summary judgment, shall be granted without the need for an oral hearing. *See* Local Rule 106.5 (D. Md. 2014).

---

[1] The Clerk shall amend the docket to reflect the correct spelling of the surname of Correctional Officer Goebel.

## I. Background

Watson claims that on May 7, 2013, while housed in Unit 1, A Wing at NBCI, Correctional Officer Goebel removed his mattress from his cell. An x-ray was taken and a syringe was found inside the mattress. The mattress was destroyed. Watson states he was immediately informed that he would be given a replacement mattress, but despite his repeated requests, he did not receive another mattress until June 17, 2013. He claims that he submitted sick-call requests to the medical department for back pain and was examined by a prison physician who determined that he had injured his back due to sleeping "on a bare-metal bed frame for over a long length of time." ECF No. 1.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this court "need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet*

*Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the

plaintiff's position" is insufficient to defeat a defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed.R.Civ.P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## III. Analysis

Defendants state that on May 7, 2013, Watson's cell was searched. When his mattress was x-rayed, a syringe was discovered hidden inside the mattress. Watson was issued a notice of infraction charging him with violation of Rules 105 and 113.[2] ECF No. 15, Ex. 2. He subsequently pled guilty to the Rule 113 violation and was sanctioned with a 180-day segregation term, the revocation of 150 days of good conduct time, and the indefinite suspension of visitation. *Id.* The record of Watson's time on segregation, including his contact with medical staff, is provided by defendants. *Id.*, Ex. 1 at White Decl. & Attachments.

On May 24, 2013, Watson filed an Administrative Remedy Procedure ("ARP") grievance claiming that Goebel confiscated his mattress and had not returned it after it was x-rayed. He complained that nothing was wrong with the mattress and he had been sleeping on steel for the "past

---

[2] Rule 105 involves the possession, use, or manufacture of a weapon. Rule 113 involves the possession of or use of paraphernalia that may be for the use of an intoxicant, drug, or controlled dangerous substance. ECF No. 15, Ex. 2.

4

several weeks," causing pain in his lower back and neck. *Id.*, Ex. 3 at pgs. 3-4. The investigation into Watson's ARP revealed that a mass shakedown had occurred in Housing Unit I at NBCI, an x-ray showed a syringe in Watson's mattress, and the mattress was destroyed. Sergeant Iser called the main property room and requested that a new mattress be sent to Housing Unit 1 to replace Watson's mattress. Iser reported that when offered a replacement mattress, Watson refused it. The ARP was dismissed on June 10, 2013. ECF No. 15, Ex. 3 at pgs. 3-7.

On June 25, 2013, Watson filed another ARP complaining about his medical care. He indicated that his sick-call requests received no responses and the medication he was receiving for lower back pain was not working. *Id.*, Ex. 3 at pgs. 8-9. Defendants present over 100 pages from Watson's medical records, which indicate that Watson had a "significant history of complaints for lower back pain" that pre-dated the May 2013 incident and that he was periodically seen by health care staff for back pain. *Id.*, Ex. 4. On January 10, 2013, he complained of ongoing lower back pain from working out and difficulty sleeping. In March of 2013, Watson again complained of back pain after falling out of his bunk. On May 9, 2013, he complained of back pain that moved from his lower to middle of his back. He did not mention the confiscation of his mattress at this time, but did request the renewal of his Robaxin[3] medication. *Id.*

On May 22, 2013, Watson was seen by Physician's Assistant ("PA") Flury for complaints of back pain. He reported the confiscation of his mattress and his having to lie on steel for two weeks, and was prescribed Naproxen[4] and a muscle rub. Further, he was ordered not to work or to

---

[3] Robaxin (methocarbamol) is a muscle relaxant. It works by blocking nerve impulses (or pain sensations) that are sent to the brain. http://www.drugs.com/robaxin.html

[4] Naproxen is a nonsteroidal anti-inflammatory drug (NSAID). It works by reducing hormones that cause inflammation and pain in the body. http://www.drugs.com/naproxen.html

participate in recreation for 14 days. *Id.*, Ex. 4 at pgs. 22-23. On July 15, 2013, Watson was seen by Nurse Swan for a complaint of ongoing back pain and rash. No deformities were noted and Swan directed that Watson continue on his medication regimen and increase his activity level. On July 18, 2013, Watson was again evaluated for his back pain and medication complaints and referred to a PA. ECF No. 15, Ex. 4 at pgs. 27-32. Watson returned to the medical department on July 19, 2013, claiming he slipped on water, fell in his cell, and could not walk. He was brought to the medical department on a stretcher and complained of back, wrist, and neck pain and numbness in his right arm. When examined by medical staff, he was found to have no labored respirations and no swelling, redness, or open areas noted to the back or extremities. He was, however, admitted to the infirmary due to his complaints of pain. On July 20, 2013, he informed Dr. Stallworth the neck pain he experienced after the confiscation of his mattress had resolved after receipt of the replacement mattress, but his back, neck, and shoulder pain had reoccurred after his fall. He was discharged from the infirmary on July 22, 2013, wearing a cervical brace. X-rays were normal and he was diagnosed as having a symptomatic sprain of the neck and shoulder region. *Id.*, Ex. 4 at pgs. 33-59. Finally, defendants affirm, through the declaration of Inmate Grievance Office ("IGO") Executive Director Scott Oakley, that Watson did not fully grieve his claim regarding the failure to provide him a replacement mattress. *Id.*, Ex. 5 at Oakley Decl.

In his opposition, Watson reiterates his claim that his mattress was not returned to him for forty days and states that he filed institutional requests and grievances through the IGO regarding same. He claims that when no action was taken to fix the problem, he filed a timely ARP with the

Warden and an appeal to the Commissioner, who did not respond. He therefore claims he was unable to exhaust the ARP process.[5] ECF No. 20 at pg. 3.

In their reply defendants provide the declaration of Sergeant Correctional Officer Walter Iser, who affirms that a new mattress was received from the NBCI property room and brought to Watson's cell on May 7, 2013, the same day of the cell search. Iser maintains that Watson refused to accept the mattress. ECF No. 26, Ex. 1 at Iser Decl. Defendants further state there is no record that Watson filed an inmate request form to Sergeant Iser or to Lt. Smith during the time period of May 10, 2013, to May 14, 2013. *Id.*, Ex. 2 at Durst Decl. Defendants reassert their claim that Watson did not exhaust his ARPs to the IGO. ECF No. 26. Watson, in turn, disputes defendants' arguments and seemingly claims that if he had refused the mattress as offered on May 7, 2013, why would he file an inmate request seventeen days later asking for a replacement. ECF No. 31. Finally, Watson claims that he filed all administrative remedies on time. *Id.*

## IV. Discussion

Defendants argue that Plaintiff's claim is barred due to his failure to exhaust his administrative remedies. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

---

[5] Although Watson states that he was unable to fully exhaust the ARP process to the IGO due to the failure of the Commissioner to respond to his appeal, he attaches an exhibit to his opposition which is a letter allegedly written to Executive Director Scott Oakley on July 31, 2013, seeking review of the ARP denied by the Warden. ECF No. 20 at Ex. 2.

some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Watson's claims fall under the exhaustion prerequisites of § 1997e(a) and must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. The prisoner then has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Md. Code Ann., Corr. Serv. §§ 10–206, 10–210; Md. Regs. Code Title 12 § 07.01.03. Defendants argue, through the submission of a verified declaration, that Watson did not exhaust his remedies to the IGO. Watson, who has the burden of refuting this argument does not provide any verified exhibits showing that he fully exhausted his remedies and has, at best, made conflicting statements regarding exhaustion.

8

Alternatively, after examination of the complaint and defendants' summary judgment motion, the undersigned finds no constitutional violations. Watson has failed to set out a claim against defendants Stouffer, Shearin, Smith, and Saville alleging how they personally participated in violating his rights under the law. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Moreover, an inmate may set out a conditions-of-confinement claim by alleging that he was deprived of a basic human need that was objectively sufficiently serious and, regarding which, prison officials subjectively acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F.2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Defendants affirm under penalty of perjury through the declaration of Officer Iser that they offered Watson another mattress on May 7, 2013, the day his original mattress was taken away and found to contain contraband. They claim that he refused the replacement mattress. Watson again fails to refute this asseveration by verified affidavit.

Setting aside defendants' argument that prison staff attempted to replace Watson's mattress in a timely manner, Watson's claim fails because he has not demonstrated an Eighth Amendment violation causing him to sustain an injury from the lack of a mattress.[6] There is no dispute that he had pre-existing complaints of back pain in the months before the May 2013 event. Further, when seen by medical staff for his claims of back, shoulder, and neck pain during and after the confiscation and return of his mattress, objective tests and evaluations found no associated problems with his spine or exacerbation of his pre-existing back discomfort. The only objective problem noted, for which treatment was provided, was a neck sprain attributable to Watson's slip and fall in a pool of water in July of 2013.

## V. Conclusion

Having found no genuine dispute of material fact justifying a trial on the merits in this case, the court shall grant defendants' motion to dismiss or, in the alternative, motion for summary judgment, construed as a motion for summary judgment.[7] A separate Order shall be entered forthwith.

Date: January 28, 2015

James K. Bredar
United States District Judge

---

[6] A mattress deprivation for a relatively short period of time is not "sufficiently serious" enough to satisfy the objective prong of an Eighth Amendment claim. *See, e.g., Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (unpublished). That is especially true when the inmate played some role in causing his mattress to be removed. *Cf. Banks v. Mozingo*, 423 F. App'x 123, 127 (3d Cir. 2011) (unpublished) (declining to find an Eighth Amendment violation when the prisoner created the conditions of which he complained).

[7] In light of the court's decision, Watson's motion to appoint counsel shall be denied as moot.